UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

WENDY MARTIN, an individual,

      Plaintiff,                                                                 Case No.

v.

BROWARD COUNTY, FLORIDA,
a political subdivision created pursuant to
the Florida Constitution and laws of the State of Florida,

      Defendant.
_____/

**COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES,**
**AND DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiff, WENDY MARTIN (hereinafter "MARTIN"), by and through undersigned counsel, and files this civil action and respectfully requests this Court to issue injunctive relief and damages for violations of the United States Constitution perpetrated by Defendant, BROWARD COUNTY, FLORIDA (hereinafter "BROWARD COUNTY") and alleges in support as follows:

### I.    INTRODUCTION, JURISDICTION, AND VENUE

1. BROWARD COUNTY operates and controls Broward County Animal Care and Adoption, which provides a variety of services, including but not limited to the operation of an Animal Care and Adoption Center and Volunteer Program.

2. BROWARD COUNTY's Animal Care and Adoption Center (hereinafter "Animal Shelter") purportedly provides shelter for homeless and lost pets and has engaged the public through a Volunteer Program to further assist in some of the operations of the Animal Shelter.

3. Volunteers are required to be qualified to participate in the program by undergoing a thorough application process, which include a criminal background check, interview, orientation, and training.

4. Volunteers can donate their time in a variety of positions, some of which include direct interaction with, and observation of, animals housed in kennels within the Animal Shelter.

5. Volunteers are non-compensated workers and often donate their time due to their individual love of animals and desire to provide care to improve the lives of the animals within the Animal Shelter.

6. BROWARD COUNTY has terminated volunteers, including MARTIN, who personally witnessed and publicly disseminated information regarding inappropriate management practices and inhumane conditions observed of the "sheltered animals" in the custody and care of the Animal Shelter.

7. Upon information and belief, BROWARD COUNTY terminated these volunteers for the sole purpose to silence public criticism of the management of its Animal Shelter and inhumane treatment of the animals in its care and custody.

8. MARTIN seeks damages and injunctive relief enjoining Defendant from violating Plaintiff's rights to freedom of speech guaranteed by the First and Fourteenth Amendments to the United States Constitution.

9. This action arises under the First and Fourteenth Amendments to the United States Constitution and is brought pursuant to 42 U.S.C. § 1983.

10. This Court has jurisdiction under, and by virtue of 28 U.S.C. §§ 1331, 1343 to order an injunction, compensatory and punitive damages, attorney's fees and court costs, expenses, pre-

judgement and post-judgement interest, and any other legal and/or equitable relief this Court deems appropriate.

11. Venue is proper in this Judicial District under 28 U.S.C. § 1391(b) as the Defendant exists in this District, and the events that give rise to this cause of action arose in this District.

12. This Court is authorized to issue injunctive relief under Rule 65 of the Federal Rules of Civil Procedure.

13. This Court is authorized, pursuant to 42 U.S.C. § 1988, to grant Plaintiff's prayer for relief regarding vindication of civil rights including reasonable attorneys' fees and court costs.

## II.   PARTIES

14. Plaintiff, WENDY MARTIN ("MARTIN"), is a natural person and resident of Broward County, Florida.

15. Defendant, BROWARD COUNTY, FLORIDA, is a political subdivision of the State of Florida, and operates and controls Broward County Animal Care and Adoption.

## III.   GENERAL FACTUAL ALLEGATIONS

16. MARTIN is an animal welfare advocate who volunteers her time to save the lives of neglected, abused, and homeless dogs and cats, and to improve the lives of sheltered animals during their periods of confinement at animal shelters.

17. MARTIN volunteered at the Animal Shelter from June of 2018 to January of 2019.

18. MARTIN was also a member of BROWARD COUNTY's Animal Care Advisory Committee from September 27, 2016 to May 2, 2019.

19. At all times material hereto, Henry Sniezek ("Sniezek"), Lauralei Combs ("Combs"), and Alessandra Medri ("Medri") were agents of BROWARD COUNTY, who acted within the course

and scope of their employment, and who had authority to terminate Plaintiff's volunteering opportunities.

20. Further, at all times material hereto, Sniezek, Combs, and Medri, as employees of BROWARD COUNTY, had the means and opportunity to adversely affect MARTIN's position on Broward County's Animal Care Advisory Committee.

21. MARTIN considers her volunteer work at animal shelters to be an important societal benefit.

22. While a volunteer and committee member with BROWARD COUNTY's Animal Care and Control, MARTIN exercised her First Amendment right to speak upon matters of social and moral concern and document the events and the conditions at the Animal Shelter.

23. Specifically, MARTIN expressed her opinions that BROWARD COUNTY, through its agents and employees, was neglecting or mistreating animals and grossly mismanaging the Animal Shelter.

24. MARTIN made these comments as a concerned member of the public, as a member of the community, and out of concern for the well-being of the animals under the care and custody of the Animal Shelter.

25. On January 15, 2019, MARTIN was terminated as a volunteer.

26. Upon information and belief, the unjustified termination was an act of retaliation in response to MARTIN's constitutional exercise of free speech regarding the Animal Shelter.

27. On May 2, 2019, MARTIN was removed from her position on the Animal Care Advisory Committee.

28. Upon information and belief, the unjustified removal was an act of retaliation in response to MARTIN's constitutional exercise of free speech regarding the Animal Shelter.

## IV.  SPECIFIC FACTUAL ALLEGATIONS OF RETALIATION

29. On September 27, 2016, MARTIN was unanimously appointed to serve on the Animal Care Advisory Committee ("Committee") by the Broward County Board of County Commissioners ("BOCC").

30. On January 19, 2018, at an event hosted by BROWARD COUNTY, MARTIN was requested to provide Sniezek with her personal and professional opinions on the candidates for Director of the Animal Shelter.

31. During a subsequent event, MARTIN was invited to meet with Combs, a candidate for Director of the Animal Shelter, and again provide her personal and professional opinions to Sniezek on then-candidate Combs.

32. Combs was offered the position by BROWARD COUNTY, accepted, and became the acting Director of the Animal Shelter in March of 2018.

33. In June of 2018, MARTIN became a volunteer at the Animal Shelter.

34. On or about July of 2018, MARTIN was reprimanded by Volunteer Coordinator Carolina Segarra ("Segarra") after being falsely accused by an Animal Shelter employee of not following volunteer protocols.

35. MARTIN denied the allegations and provided Segarra, Combs, and Sniezek with information to verify that MARTIN had not violated any rules.

36. An Animal Shelter employee personally verified MARTIN's defense with Segarra, however neither Combs, Segarra, nor Sniezek responded to MARTIN or investigated the false allegations against MARTIN.

37. Beginning in July of 2018, through October of 2018, MARTIN, acting as a concerned member of the public, as a member of the community, and out of concern for the well-being of the

animals under the care and custody of the Animal Shelter, expressed concerns regarding the management of the Animal Shelter, through the following acts, including but not limited to:

a. advising Sniezek of community concern regarding Combs' competency as Director of the Animal Shelter;

b. advising Sniezek of MARTIN's personal observations of inhumane conditions at the Animal Shelter, including over-crowding of animals in kennels and inadequate number of staff members, which threatened the health and psychological well-being of the animals in the Animal Shelter's care and custody;

c. supporting a request to BOCC to allow a third-party animal advocacy group, Best Friends Animal Society, to evaluate the Animal Shelter's operations and address MARTIN's concerns, of which was unanimously approved by BOCC;

d. meeting in person with Combs and Sniezek to discuss MARTIN's concerns that management was failing to meet the needs of the animals within the Animal Shelter's care and custody;

e. advising Sniezek of the need for canine behavioral programs for Animal Shelter staff members to decrease the rate of unnecessary canine euthanasia;

f. requesting a meeting with BOCC to discuss MARTIN's concerns regarding the mismanagement of the Animal Shelter and concern for the wellbeing of the animals within the Animal Shelter's care and custody;

g. contacting Broward County Mayor with concerns regarding the Animal Shelter's inhumane conditions, lack of staff members, improper euthanasia practices, significant delays on adoption based upon inability to get adoptable pets spayed

   and neutered, and lack of "play group" sessions, which are essential for the adoption process; and

  h. notifying Combs of concerns with mismanagement of the Animal Shelter, specifically the exponential increase in animal intake while kennel space and staff remained the same resulting in over-crowding and under-staffing issues, unsanitary facility conditions, and delays in veterinary treatment for the animals in the Animal Shelter's care and custody.

38. On October 18, 2018, MARTIN witnessed a canine being dragged out of the Animal Shelter by two catch poles causing the canine to bleed from his eye and nose from burst capillaries.

39. MARTIN was distressed as a result of witnessing the harsh conditions at the Animal Shelter for months and upon viewing the mistreatment of this particular animal, MARTIN had to temporarily withdraw from volunteering at the Animal Shelter.

40. In October of 2018, false complaints were made to Combs purportedly by Animal Shelter staff against MARTIN for alleged inappropriate conduct while volunteering.

41. These accusations were rebutted by MARTIN, however, upon information and belief, there was no investigation or response by Sniezek.

42. On October 24, 2018, Sniezek caused a false and meritless complaint to be filed against MARTIN to the Professional Standards/Human Rights Section ("PSHR").

43. PSHR conducted an investigation and was unable to find conclusive evidence of the allegations against MARTIN, thereby administratively closing the case on May 16, 2019.

44. In November of 2018, Best Friends Animal Society evaluated the Animal Shelter's operations.

45. In November of 2018, MARTIN resumed volunteering at the Animal Shelter.

46. MARTIN continued to witness BROWARD COUNTY grossly mismanage the Animal Shelter, resulting in staff neglecting and/or mistreating animals.

47. From November of 2018, through December of 2018, MARTIN, acting as a concerned member of the public, as a member of the community, and out of concern for the well-being of the animals under the care and custody of the Animal Shelter, expressed concerns regarding the management of the Animal Shelter, through the following acts, including but not limited to:

   a. contacting BROWARD COUNTY Office of the Inspector General to discuss her concerns with the mismanagement and inhumane conditions of the Animal Shelter;

   b. contacting television station WSVN to give a statement of her opinions on the mismanagement and inhumane conditions of the Animal Shelter;

   c. submitting a letter to the Sun-Sentinel with her opinions that the Animal Shelter was not working with the rescue community to save more adoptable animals;

   d. requesting a copy of the Best Friends Animal Society's Field Assessment Report, which corroborated MARTIN's concerns;; and

   e. submitting the Best Friends Animal Society's Field Assessment Report to BROWARD COUNTY's Mayor in support of her previously unaddressed complaints regarding the mismanagement of the Animal Shelter.

48. On November 28, 2018, MARTIN interviewed for the Animal Shelter's Assistant Director position.

49. Despite MARTIN's qualifications and a recommendation from the Animal Care Advisory Committee's Chairwoman, BROWARD COUNTY, intentionally rejected MARTIN's application and hired an unqualified candidate, Alessandra Medri.

50. On or about December 21, 2018, BROWARD COUNTY sent correspondence to all Animal Shelter volunteers, including MARTIN, suggesting that it had the authority under the Volunteer Agreement to terminate their services if volunteers continued "bashing" the Animal Shelter on social media. Exhibit A.

51. This correspondence from BROWARD COUNTY directly targeted the volunteers' use of social media platforms which have been recognized by the Supreme Court of the United States as providing "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017).

52. On January 14, 2019, MARTIN posted on Facebook about a dog named Prince, whom she said was *"another example of how the COMMUNITY got together to save a life regardless of the obstacles put in the Community's way by the County shelter,"* and encouraging *"everyone in Broward County who loves animals to come voice their opinion"* at an upcoming community meeting taking place at the Animal Shelter on January 22, 2019. Exhibit B.

53. Upon information and belief, BROWARD COUNTY, through its agent Alessandra Medri, directed preparation of a letter terminating MARTIN as a volunteer as a direct response to MARTIN's January 14, 2019 public social media post expressing her opinions regarding the Animal Shelter.

54. On January 15, 2019, BROWARD COUNTY terminated MARTIN with a letter signed by Combs stating that *"[p]ursuant to the terms of the Volunteer Program and Agreement, the Division has chosen to terminate your participation in the Program."* Exhibit C.

55. The January 15, 2019 termination letter contains no explanation for MARTIN's abrupt termination from the Volunteer Program.

56. BROWARD COUNTY did not take any corrective actions prior to terminating MARTIN, as required in the Volunteer Program Standard Operating Procedures.

57. On January 22, 2019, MARTIN filed a formal complaint with PSHR against Sniezek and Combs for retaliation against MARTIN's constitutional exercise of free speech that resulted in her termination as a volunteer at the Animal Shelter.

58. To date, more than two years later, PSHR has not concluded the investigation, resulting in correspondences between Combs and Sniezek regarding MARTIN to remain redacted.

59. From January 22, 2019, through February of 2019, MARTIN, acting as a concerned member of the public, as a member of the community, and out of concern for the well-being of the animals under the care and custody of the Animal Shelter, expressed concerns regarding the management of the Animal Shelter, through the following acts, including but not limited to:

   a. contacting BOCC to share concerns with Animal Shelter's management and supervising staff, specifically Sniezek, Combs, and Medri; and

   b. submitting an op-ed statement to the Sun-Sentinel regarding the inhumane conditions at the Animal Shelter.

60. On May 2, 2019, MARTIN was removed from her position on the Animal Care Advisory Committee without justification.

61. Upon information and belief, the unjustified removal was an act of retaliation, in response to MARTIN's constitutional exercise of free speech regarding the Animal Shelter.

62. Upon information and belief, Sniezek and Combs substantially influenced the BOCC's decision to remove MARTIN, or otherwise caused MARTIN to be removed.

63. Specifically, Combs and Sniezek influenced the decision by falsely conveying to the BOCC that MARTIN was yelling at and threatening Animal Shelter employees.

64. These allegations were communicated to BOCC prior to the conclusion of PSHR's investigation being administratively closed for lack of evidence.

65. These allegations were communicated to BOCC without any valid basis and despite never being personally observed or heard by Combs or Sniezek.

66. As documented in detail above, BROWARD COUNTY terminated MARTIN's position in the Volunteer Program in January of 2019 and removed MARTIN from the Animal Care Advisory Committee in May of 2019 in retaliation for MARTIN's constitutional exercise of free speech regarding mismanagement of the Animal Shelter.

67. As a direct and proximate cause of BROWARD COUNTY's retaliatory actions detailed herein, MARTIN has incurred damages, including the loss of the benefit of serving the community as an Animal Shelter volunteer and member of the Animal Care Advisory Committee.

68. MARTIN has retained undersigned counsel and has satisfied all conditions proceeding this litigation, or such conditions have been waived by Defendant.

## LEGAL FRAMEWORK

69. MARTIN brings this cause of action against BROWARD COUNTY for depravation of her constitutional rights afforded by the First Amendment and protected against intrusion by the States under the Fourteenth Amendment, within the meaning of 42 U.S.C. § 1983.

70. The First Amendment to the United States Constitution guarantees that no State shall abridge the freedom of speech. *See Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 500–501 (1952).

71. Freedom of speech protected by the First Amendment is among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by state action. *Lovell v. City of Griffin*, 303 U.S. 444, 450 (1938).

72. The First Amendment "embraces at the least the liberty to discuss publicly and truthfully all matters of public concern." *Thornhill v. Alabama*, 310 U.S. 88, 101–102 (1940); *see Mills v. Alabama*, 384 U.S. 214, 218 (1966).

73. Freedom of speech is "indispensable to the discovery and spread of political truth," *Whitney v. California*, 274 U.S. 357, 375, (1927).

74. The First and Fourteenth Amendments remove "governmental restraints from the arena of public discussion, putting the decision as to what views shall be voiced largely into the hands of each of us, in the hope that use of such freedom will ultimately produce a more capable citizenry and more perfect polity…" *Cohen v. California*, 403 U.S. 15, 24 (1971).

75. "A fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more. The Court has sought to protect the right to speak in this spatial context." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017).

76. "While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the 'vast democratic forums of the Internet' in general, *Reno v. American Civil Liberties Union*, 521 U.S. 844, 868, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997), and social media in particular." *Id.* at 1735.

> Social media offers "relatively unlimited, low-cost capacity for communication of all kinds." *Reno*, supra, at 870, 117 S.Ct. 2329. On Facebook, for example, users can debate religion and politics with their friends and neighbors or share vacation photos. On LinkedIn, users can look for work, advertise for employees, or review tips on entrepreneurship. And on Twitter, users can petition their elected representatives and otherwise engage with them in a direct manner. Indeed, Governors in all 50 States and almost every Member of Congress have set up accounts for this purpose. In short, social media users employ these websites to engage in a wide array of protected First Amendment activity on topics "as diverse as human thought." Reno, supra, at 870, 117 S.Ct. 2329 (internal quotation marks omitted).

*Packingham v. North Carolina*, 137 S. Ct. 1730, 1735–36 (2017) (internal briefing citations omitted).

77. Governmental benefits and privileges can only be denied in a manner that comports with the First Amendment. *Rodin v. City of Coral Springs*, 229 Fed. Appx. 849, (11th Cir. 2007); *Hyland v. Wonder*, 972 F.2d 1129, 1136 (9th Cir. 1992).

78. 42 U.S.C. § 1983 protects government employees and volunteers from retaliatory actions inflicted after the employee or volunteer exercises his/her First Amendment rights. *See Pickering v. Bd. of Ed. Of Township High Sch. Dist.*, 391 U.S. 563 (1968) (holding that when a person in the uniquely informed class speaks, "it is essential that they be able to speak out freely [. . .] without fear of retaliatory dismissal; *Rodin*, 229 Fed. Appx. 849 (11th Cir. 2007); *Hyland*, 972 F.2d 1129, 1136 (9th Cir. 1992).

**COUNT UNDER 42 U.S.C. § 1983**
**FIRST AMENDMENT RETALIATION**

Plaintiff, MARTIN repeats, realleges, and reaffirms the allegations set forth in paragraphs 1 - 78 in full and further alleges:

79. MARTIN brings this cause of action against BROWARD COUNTY for deprivation of her constitutional rights afforded by the First Amendment, within the meaning of 42 U.S.C. § 1983.

80. MARTIN's position as a volunteer at the Animal Shelter and on the Committee were terminated in a manner that violates the First Amendment.

81. While volunteering for BROWARD COUNTY's Animal Shelter, MARTIN exercised her First Amendment right to freedom of speech through contacting Animal Shelter's supervisors, local government officials, the press, writing letters to the Editor, and by utilizing social media to bring awareness to BROWARD COUNTY's gross mismanagement of the Animal Shelter.

82. At all times relevant hereto, MARTIN spoke truthfully as a concerned citizen, and not out of a duty to an employer.

83. The subject matter of which MARTIN constitutionally exercised her free speech were of public concern because the content was truthful and related to social and moral concerns of the community, specifically, BROWARD COUNTY's abusive and gross mismanagement of the Animal Shelter.

84. MARTIN's volunteer status placed her within a uniquely informed class of people that have first-hand knowledge regarding the Animal Shelter's operation.

85. Accordingly, the interest of protecting her First Amendment right outweighs any interest of BROWARD COUNTY's in curtailing the truthful content of her speech.

86. BROWARD COUNTY, through its agents and employees, including but not limited to Sniezek and Combs, unlawfully retaliated against MARTIN by:

   a. terminating her opportunity to volunteer with the Animal Shelter on January 15, 2019;

   b. intentionally rejecting her application for the Assistant Director position, instead hiring an underqualified applicant; and

   c. substantially and wrongfully influencing the decision to remove MARTIN from the Animal Care Advisory Committee.

87. At all times material hereto, the agents and employees of BROWARD COUNTY mentioned herein were acting under color of state law, statutes, ordinances, and/or regulations and were of such position and authority that their actions may fairly be said to constitute the official expressions of BROWARD COUNTY.

88. Further, BROWARD COUNTY's agents and employees, including but not limited to Combs, Sniezek and Medri, possessed decision making authority at Animal Shelter.

89. At all times material hereto, BROWARD COUNTY, through its agents and employees, were and are aware that retaliating against a person for truthfully speaking about matters of public concern is prohibited under the First Amendment of the United States Constitution.

90. BROWARD COUNTY's retaliation against Plaintiff was willful, intentional, malicious, and done with a reckless indifference to the Plaintiff's constitutional rights, thus warranting an award of punitive damages against BROWARD COUNTY.

91. Further, BROWARD COUNTY's termination of MARTIN, through its agents and employees, was unlawful as the decision was substantially related to her protected speech, evidenced by:

    a. the close temporal proximity between the termination and her protected speech, thus demonstrating causation;

    b. the termination was made subsequent to an unsupported complaint filed against her at the direction of Sniezek and Combs; and

    c. the termination was made subsequent to the Animal Shelter's supervisors and employees expressing hostility towards MARTIN for her protected speech.

92. BROWARD COUNTY cannot justify terminating MARTIN as the termination would not have been issued, absent her truthful protected speech.

WHEREFORE, Plaintiff, WENDY MARTIN, respectfully requests an Order of Judgement against Defendant, BROWARD COUNTY:

    a. Declaring that BROWARD COUNTY violated 42 U.S.C. § 1983;

b. Enjoining BROWARD COUNTY from implementing any restrictions preventing WENDY MARTIN from engaging as a volunteer;

c. Award the recovery of fair and reasonable damages, including punitive damages to Plaintiff, as well as reasonable attorney's fees and costs; and

d. Grant any additional relief this Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff further demands a trial by jury of all causes of action triable as a right by jury.

Dated: April 8, 2021                        Respectfully Submitted:

/s/ Marcy I. LaHart, Esq.
Florida Bar No. 0967009
Marcy@floridaanimallawyer.com

MARCY I. LAHART, P.A.
 207 SE Tuscawilla Road
Micanopy, FL 32667
(352) 545-7001

/s/ Heidi Mehaffey, Esq.
Florida Bar No. 118806
Heidi@Hartsell-Law.com
Shai Ozery, Esq.
Florida Bar No. 118371
Shai@Hartsell-Law.com
Robert N. Hartsell, Esq.
Florida Bar No. 636207
Robert@Hartsell-Law.com

ROBERT N. HARTSELL, P.A.
61 NE 1st Street, Suite C
Pompano Beach, Florida 33060
(954) 778-1052